IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
February 29, 2012 Session

**STATE OF TENNESSEE v. TERRY BONDS**

**Appeal from the Criminal Court for Hamilton County**
**No. 245247      Don W. Poole, Judge**

**No. E2011-01199-CCA-R3-CO - Filed May 31, 2012**

Appellant, Terry Bonds, appeals the trial court's revocation of his probation, claiming that the trial court did not have jurisdiction to revoke his probation because his sentence had expired. Appellant also claims that the trial court abused its discretion by revoking his probation. The State contends that this court should dismiss the appeal because the notice of appeal was untimely and deficient in form. Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which THOMAS T. WOODALL, J., joined. JERRY L. SMITH, J., not participating.

Wesley D. Stone, Knoxville, Tennessee (on appeal); and James W. Clements, III, Chattanooga, Tennessee (at hearing), for the appellant, Terry Bonds.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; William H. Cox, III, District Attorney General; and Lance Pope, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I. Procedural History and Facts

On December 15, 2003, appellant pled guilty to possession of less than one-half gram of cocaine with intent to sell, a Class C felony, and possession of a weapon, a Class E felony. Pursuant to the plea agreement, the trial court sentenced appellant to six years for the cocaine charge and one year for the weapon charge, suspended the concurrent sentences, and placed appellant on supervised probation. Appellant's probation officer filed a probation violation

report on September 24, 2009, alleging that appellant violated the terms of his probation by committing the offenses of aggravated arson and reckless endangerment; failing to pay court costs; and engaging in threatening behavior toward his victims. On September 29, 2009, the trial court ordered the issuance of a "Probationary Capias" for appellant's arrest, and the court clerk issued a "Capias for Arrest for Probation Violation" on the same day. The sheriff served the capias for arrest on October 2, 2009.

At the probation revocation hearing, the parties stipulated that if appellant's probation officer were to testify, she would state that appellant had not violated his probation during the five years and nine months he had been on probation. Officer Cameka Bruce, with the Chattanooga Police Department, testified that while patrolling on the night of September 18, 2009, she saw appellant walking away from the front porch at 801 East 49th Street shortly after 3:00 a.m. Less than five minutes after seeing appellant, Officer Bruce received a call reporting a fire at the house from which she saw appellant leaving.

On cross-examination, Office Bruce testified that appellant caught her attention that night because nobody else was outside in the area. Appellant was not acting suspicious or nervous when Officer Bruce observed him. She did not see appellant with an incendiary device nor did she see a fire at the home. Officer Bruce was less than one hundred feet from appellant when she observed him. Based on the time she began her shift, Officer Bruce estimated that it was 3:00 a.m. when she saw appellant. Officer Bruce testified that she immediately returned to the home when she received the call about the fire. She was not involved with appellant's arrest or the arson investigation.

Lakesha Patterson testified that she was appellant's former girlfriend. She lived at 801 East 49th Street at the time of the fire. She said that the entry to her house had a walk-up porch. Her front door, which led to the "front" room, was wooden with three windows.

Appellant came to Ms. Patterson's home after 9:00 p.m. on September 18, 2009, and they "had a few words." Ms. Patterson stated that she told appellant "to leave, [she] was tired of him, [and she] wasn't ready to put up with him no [sic] more[.]" She told appellant that she was ending their relationship, and he responded, "I'll deal with you later." Ms. Patterson said that her daughters, Tashayla and Desharla Anderson, were in the home while she and appellant argued. At that time, Tashayla[1] was nineteen years old and Desharla was thirteen years old. Ms. Patterson stated that she and her aunt called Tashayla "Piggy" as a nickname. She said that appellant had heard them calling Tashayla "Piggy" and began calling her that as well.

---

[1] Because Ms. Patterson's daughters share the same last name, we will refer to them by their first names to avoid confusion. In doing so, we intend no disrespect.

After the argument, Ms. Patterson and Tashayla went to the home of Ms. Patterson's aunt, leaving Desharla in Ms. Patterson's home with appellant. Appellant left Ms. Patterson's house and went to a nightclub. Ms. Patterson and Tashayla returned to Ms. Patterson's home shortly after 10:00 p.m. At approximately 10:30 p.m., Ms. Patterson left her house again, leaving Tashayla and Desharla inside, and did not return until she received a phone call reporting that her house was on fire. Ms. Patterson testified that she returned to her house at 3:45 a.m. She said that the house was "smoked out," and the insulation had burned. Ms. Patterson stated that she and her daughters lost everything they had in the fire.

On cross-examination, Ms. Patterson testified that her neighbors said appellant had gone to the 45th Street Lounge nightclub with them before the fire. She said that the nightclub was approximately a fifteen-minute drive from her home. Ms. Patterson did not know how long appellant stayed at the nightclub. Ms. Patterson said her neighbors reported that appellant did not ride back home with them. According to Ms. Patterson, Captain Leslie Morgan, an investigator with the Chattanooga Fire Department, spoke to the neighbors with whom appellant went to the nightclub.

Ms. Patterson further testified that she left her house the second time to go see her boyfriend who had just been released from prison. She stated that Tashayla was at home with Desharla, except when Tashayla went out for a walk. Ms. Patterson said that on previous occasions she and Tashayla smoked inside their home. She knew that Tashayla was not smoking the night of the fire because "it was confirmed, [they] did not have no [sic] cigarette butts or roaches or anything . . . in the house when the fire investigator went through the house and did the investigation." Ms. Patterson stated that she knew appellant had thrown something through her window because her daughters heard noises, and they heard appellant yelling "Piggy." Ms. Patterson said that her daughters did not see appellant, but they recognized his voice.

Ms. Patterson denied consuming alcohol on the day of the fire. When she received the call about the fire, it took her approximately forty-five minutes to return to her house. Ms. Patterson stated that her couch was blocking the front door to her house, and she used the back door for entry and exit. Ms. Patterson described her front door as a thick wooden door. The bottom window was plexiglass, and if someone knocked out the window, he or she could stick a hand inside. Ms. Patterson testified that appellant did not make any threats other than telling her that he would deal with her later. She said that appellant was wearing a black t-shirt over a white t-shirt, a red Saint Louis Cardinals baseball cap, blue jean shorts, and black and yellow sneakers.

On redirect examination, Ms. Patterson testified that her neighbor, Joselyn Norwood, told her that appellant went to Ms. Norwood's house after he left the nightclub. On recross-

examination, Ms. Patterson testified that she talked to Ms. Norwood the day after the fire when Ms. Norwood came to check on her and her family. Ms. Norwood told Ms. Patterson that appellant left the Norwood house at approximately 2:30 a.m. the morning of the fire. Ms. Patterson gave the police Ms. Norwood's name, and the police went to speak with Ms. Norwood.

Tashayla testified that she lived at 801 East 49th Street with her mother, Ms. Patterson, and her sister, Desharla. She stated that her mother and appellant argued at her mother's house. Tashayla and her mother left their house and went to their aunt's house. Desharla and appellant remained at home. When Tashayla and Ms. Patterson returned approximately ten minutes later, appellant had left. Tashayla said that she left the house again at approximately 11:00 p.m. to take a walk around the block with a friend and left Desharla asleep on the couch. Desharla was still asleep on the couch when Tashayla returned to her home at approximately 12:00 a.m. Tashayla stated that she locked the doors, checked the windows, moved Desharla off the couch, took their dog, and went into her room. Tashayla said that nothing was burning in the front room when she took Desharla back to her bedroom. Tashayla denied doing anything in the house that could have caused a fire.

Tashayla and Desharla were both in Tashayla's room in the back of the house. Tashayla fell asleep, and appellant awakened her by banging on her bedroom window and saying "Piggy, open the door." She said that she did not respond to appellant. Tashayla did not look out the window, but she was positive that it was appellant because she "knew his voice." She stated that she was familiar with appellant's voice because her mother had dated him. Tashayla said that her mother and aunt nicknamed her "Piggy," and appellant began calling her that as well. According to Tashayla, nobody else called her "Piggy."

Appellant eventually left, but Tashayla did not go back to sleep. Approximately five minutes after appellant left, Tashayla heard a loud noise toward the front of the house. Tashayla thought that appellant had entered the house through her mother's window. She stated that she "was just laying [sic] there waiting on him to come to [her] room and ask [her] where [her mother] was because she was gone." Tashayla said that their dog began to pace and whine, but Tashayla ignored her. When the dog jumped on the bed, Tashayla arose and smelled rubber burning. Tashayla awakened Desharla, and Desharla asked Tashayla what she had done. Tashayla replied that she had not done anything and that she had made sure everything was off before they went to sleep. They opened the bedroom door, saw flames, and quickly closed it. Tashayla, Desharla, and the dog jumped out of the window. Tashayla stated that her neighbors called the police.

On cross-examination, Tashayla testified that when she left to take a walk, she was with a male friend. She said that she was sitting on her porch when she saw her friend

-4-

walking. She joined him for approximately twenty minutes. Tashayla said that she had smoked cigarettes and marijuana in the past but denied smoking that night. Tashayla said that the kitchen was next to the front room and denied cooking anything the night of the fire.

Tashayla stated that her mother had dated appellant "for a little minute." She said that appellant called her Shara before he began calling her "Piggy." A sheet covered Tashayla's window so that nobody could see inside the window and Tashayla could not see outside. Tashayla stated that nobody came back and knocked on the door after she heard the loud noise. She said that the couch consisted of cloth and had no rubber on it. She further said that nothing in the living room would have smelled like rubber burning. She testified that she was "absolutely sure" that she had not smoked in the house that night.

Captain Leslie Morgan testified that she investigated the fire at 801 East 49th Street. Captain Morgan explained that "[t]he circumstance was an unexplained fire that occurred in a duplex with two young girls in it that had . . . to escape out a window." She stated that the firefighters on the scene were not trained to investigate arson and did not know how the fire had started. Based on what Tashayla and Desharla had told them, the firefighters suspected that someone may have started the fire. The firefighters called Captain Morgan to investigate a suspicious fire. Captain Morgan spoke with Tashayla and Desharla at the scene of the fire and determined that they were in the back of the house when the fire started in the front living room area on the couch.

Captain Morgan testified that when investigating fires she looks for the source using the process of elimination. She explained that fires leave distinct patterns. Captain Morgan said that the fire at Ms. Patterson's house was not electrical. She further said that smoking did not cause the fire because the smoke detector was working, and smoking would have activated it. Captain Morgan stated that she tried to eliminate all sources of ignition, and "[t]he only possible source of ignition would have been human hands." Captain Morgan determined that the fire was arson.

Captain Morgan took samples from the scene and sent them to the Tennessee Bureau of Investigation. The samples tested negative for the presence of an accelerant. Captain Morgan stated that although the samples were negative, the fire could have still been intentionally set. Captain Morgan stated that, based on the fire patterns, the fire started on the couch. She said that the couch did not have accelerant on it but was still very flammable. The fire department did not test appellant's clothes for accelerant or signs of fire.

Captain Morgan testified that the glass and plexiglass on the door were pushed out, and appellant either set the couch on fire or dropped something flammable, like a paper bag,

on the couch. Captain Morgan said that the couch was six inches from the door, and it was possible to reach through the front door and touch the couch.

On cross-examination, Captain Morgan testified that the couch was on the front porch of the house when she arrived. She explained that firefighters removed furniture that had been on fire "to keep smoke down and get it out of the building." Captain Morgan acknowledged that the samples from the upholstered couch did not contain accelerant but stated that the fire could have consumed the accelerant or water from the fire hose may have diluted the accelerant.

Captain Morgan testified that she believed that the fire started on the couch because the fire left a distinct "V pattern." She said that when she and the firefighters reconstructed the scene, the soot and fire patterns went "straight up the wall." Captain Morgan further said that the rest of the room had smoke damage. However, the only fire damage "was coming off the couch, had consumed the couch, gone up the walls[,] and had rolled across the ceiling and out the door."

In her report, Captain Morgan noted that no residue from the plexiglass was present, which was abnormal. She explained that if the plexiglass had been in place during the fire, it would have melted and rolled down the outside of the door. If the plexiglass had been broken from the inside, it would have been on the front porch. Captain Morgan stated that the lack of residue suggested that someone from the outside pushed the plexiglass into the house and the fire consumed it.

Captain Morgan testified that officers found a lighter and cigarettes when they arrested appellant. Captain Morgan said that authorities could have tested appellant's clothes for residual accelerants, but they did not. Likewise, they did not swab appellant's hands to test for accelerant because there was no method by which to do so. Captain Morgan interviewed appellant and said that appellant denied starting the fire. He told Captain Morgan that he had been at the house earlier in the day but was not there that evening. Captain Morgan spoke with Ms. Norwood, and Ms. Norwood told her that appellant arrived at her apartment at 2:45 a.m. Captain Morgan estimated that the fire started between 2:45 a.m and 3:08 a.m. Ms. Norwood also told Captain Morgan that appellant was intoxicated.

On redirect examination, Captain Morgan reviewed her prosecution report and said that Ms. Norwood actually told her appellant arrived at her house at 2:30 a.m. and left at 2:45 a.m. According to Captain Morgan, the dispatch call came in at 3:08 a.m.

After hearing the evidence, the trial court found by a preponderance of the evidence that appellant had violated his probation. The trial court revoked appellant's probation and

ordered that he serve his six-year sentence in confinement. Appellant appeals the trial court's revocation of his probation and execution of his original sentence

## II. Analysis

On appeal, appellant argues that (1) if this court determines that the notice of appeal was untimely, we should allow the late-filed appeal in the interest of justice; (2) the trial court lacked jurisdiction to revoke his probation; and (3) the trial court abused its discretion by revoking his probation.

### A. Notice of Appeal

We first address the issues concerning appellant's notice of appeal. Appellant argues that if this court determines that he untimely filed his notice of appeal, we should waive the untimely filing in the interest of justice because "he was not properly advised of the right to appeal the revocation of probation in this matter." The State responds that appellant failed to perfect his appeal because his notice of appeal did not accurately designate from which judgment he appealed and that appellant untimely filed his notice of appeal. Thus, the State contends that this court should dismiss the appeal.

Tennessee Rule of Appellate Procedure 3(f) mandates that "[t]he notice of appeal shall specify the party or parties taking the appeal[,] . . . the judgment from which relief is sought, and shall name the court to which the appeal is taken." This court will not dismiss an appeal merely for informality of form or title of the notice of appeal. *See* Tenn. R. App. P. 3(f). The notice of appeal is an appellant's formal declaration of his or her intent to appeal. *See* Tenn. R. App. P. 3(f) Advisory Comm'n Cmt. If an appellant's notice of appeal meets this purpose, "it is irrelevant that the paper filed is deficient in some other respect." *Id.*

The body of appellant's notice of appeal, filed May 23, 2011, reads as follows:

> Comes the appellant, Terry Bonds, TDOC # 115922, pro se, hereby appeals the Trial Court's Ruling in the above styled case to the Tennessee Court of Criminal Appeals, pursuant to T.R.A.P. Rule 3 Appeal as of right. The judgment of the Trial Court was entered on the 13th day of April 2011 and as such, the appellant is timely.

The trial court entered its probation revocation order in this case on December 16, 2010. On March, 31, 2011, appellant, pro se, filed a document asking the court to reinstate his probation. The trial court treated the document as a motion to correct or reduce the sentence. *See* Tenn. R. Crim. P. 35. The trial court denied the motion in an order filed April

12, 2011. The order states that the court entered it on April 13, 2010. It is obvious from the record, as the State concedes in its brief, that the April 13, 2010 date on the order denying the motion was a clerical error, and the year should be 2011. Thus, appellant's notice of appeal designated the judgment from which he appealed. However, the trial court's April 2011 order was not the one in which the trial court revoked appellant's probation.

It is apparent from the entire record that appellant requested the reinstatement of his probation multiple times. In its April 13, 2011 order, the trial court noted that appellant asked the court to place him back on probation. Appellant filed another "Motion to Rehear Probation Violation" in June of 2011[2], after he filed the notice of appeal. The trial court again treated the June 2011 motion as a Rule 35 Motion for Correction or Reduction of Sentence. Appellant attempted to appeal approximately five months after his revocation order was entered. While the form of the notice of appeal was not technically proper, it is obvious from the entire record that appellant was aggrieved by his revocation and attempted to appeal it. We have concluded that in the limited circumstances of this case, we will not preclude consideration of the merits based on deficiencies in the notice of appeal as appellant was without benefit of counsel when he filed the notice of appeal.

Having concluded that we will not dismiss the appeal because of deficiencies in the notice, we now address the timeliness of appellant's notice of appeal. "In an appeal as of right to the . . . Court of Criminal Appeals, the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from[.]" Tenn. R. App. P. 4(a). Unlike the procedure involving the motion for new trial, the time for filing the notice of appeal to this court is not jurisdictional. *See* Tenn. R. App. P. 4(c); *see also State v. Dodson*, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989). This court may waive the notice of appeal time requirement in the "interest of justice." Tenn. R. App. P. 4(a). Appellant filed his notice of appeal on May 23, 2011, more than five months after the trial court's December 16, 2011 order of revocation and several days after the time limit for appealing the trial court's order denying the motion to correct or reduce the sentence. Thus, appellant did not timely file his notice.

Consequently, this court must determine whether we should waive the deadline in the interest of justice. In his brief, appellant contends that this court should waive the filing deadline because he "was not properly advised of the right to appeal the revocation of probation in this matter." Appellant acknowledges that the trial court advised him at the conclusion of the revocation hearing that he had thirty days to file a notice of appeal. However, appellant contends that the trial court's statements created an ambiguity as to filing

---

[2] The file stamped copy in the record is illegible, and we cannot determine when in June appellant actually filed this motion.

the notice of appeal. Appellant points to several pro se motions that he filed under the mistaken belief that the trial court still had jurisdiction. Appellant also asserts that his appointed counsel should have filed the notice of appeal as part of his continued representation pursuant to Rule 37(e)(3) of the Tennessee Rules of Criminal Procedure. The State responds that because the trial court advised appellant of the thirty-day filing deadline at the revocation hearing and in the trial court's order denying appellant's motion to correct or reduce the sentence, the interest of justice does not require that we waive the timely filing requirement.

At the probation revocation hearing, the trial court stated the following concerning appellant:

> [you will be]here for so long as whatever happens to this other case or till y'all make a determination of it. He does have, however, 30 days to decide whether he wants to file notice of appeal. . . . Mr. Bonds, you have to file notice of appeal within 30 days. I assume that you will want [trial counsel] to represent you and I would appoint him to represent you if you do decide to file that appeal.
>
> . . . So if you decide to appeal the decision - - but you will be here, you're still in the jurisdiction of this court for so long as you're here.

The trial court appointed trial counsel to represent appellant. Trial counsel was to represent appellant throughout the proceedings, including appeal, until conclusion of the case or a court allowed him to withdraw. Tenn. R. Crim. P. 37(e)(3). There is no evidence in the record that trial counsel sought to withdraw from representing appellant. Trial counsel did not file a notice of appeal for appellant, thus appellant filed a pro se notice of appeal. Even after filing the notice of appeal, appellant continued to file pro se motions asking the trial court to reinstate his probation and reconsider its ruling. Considering trial counsel's failure to file a notice of appeal and the trial court's statements that may have confused appellant, the timely filing of a notice of appeal is waived, and we will address appellant's claims in the interest of justice.

### B. Trial Court's Jurisdiction

Appellant argues that the trial court lacked jurisdiction to revoke his probation because the trial court did not file a probation violation warrant during his probationary sentence. The State responds that the "Probationary Capias" filed by the trial court met the requirements of a revocation warrant, tolled the limitations period, and preserved the trial court's jurisdiction.

A trial court may revoke a suspended sentence if it finds by a preponderance of the evidence that a defendant has violated the conditions of release. Tenn. Code Ann. § 40-35-311(e) (2010). A trial court may revoke a suspended sentence "at any time within the maximum time that was directed and ordered by the court for the suspension, after proceeding as provided in § 40-35-311(a) [.]" Tenn. Code Ann. § 40-35-310 (2010). "If a petition to revoke is initiated within the term of the sentence, any limitation of the time within which to act is tolled." *State v. Lewis*, 917 S.W.2d 251, 256 (Tenn. Crim. App. 1995) (citing *McGuire v. State*, 292 S.W.2d 190, 193 (Tenn. 1956); *State v. Carden*, 653 S.W.2d 753, 754-55 (Tenn. Crim. App. 1983)).

Generally, revocation may occur only within the probationary period. *Alder v. State*, 108 S.W.3d 263, 267 (Tenn. Crim. App. 2002) (citing *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001); Tenn. Code Ann. § 40-35-310 (1997)). However, if a trial court issues a probation revocation warrant within the term of probation, it tolls the limitation of time in which the court may act to revoke probation. *Shaffer*, 45 S.W.3d at 555; *State v. Clark*, 970 S.W.2d 516, 518 (Tenn. Crim. App. 1998). The filing of a probation violation report during the probation term is insufficient to toll the limitations period. *State v. Anthony*, 109 S.W.3d 377, 381(Tenn. Crim. App. 2001). Thus, the filing of a revocation warrant, not the report, tolls the limitations period. *See generally Shaffer*, 45 S.W.3d at 555.

When the trial court becomes aware of a defendant's potential probation violation, "the trial judge shall have the power to cause to be issued under the trial judge's hand a warrant for the arrest of the defendant as in any other criminal case." Tenn. Code Ann. § 40-35-311(a) (2010). "A warrant of arrest is an order, in writing, stating the substance of the complaint, directed to a proper officer, signed by a magistrate, and commanding the arrest of the defendant." Tenn. Code Ann. § 40-6-201 (2006). Even if a trial court does not caption its order as an arrest warrant or probation violation warrant, it may still satisfy the definition of "warrant for arrest" if it contains the judge's signature, lists the violations of the defendant's suspended sentence, and directs an officer to arrest the defendant. *State v. Almeko Chiffon Woods*, No. W2007-02025-CCA-R3-CD, 2008 WL 3983107, at * 4 (Tenn. Crim. App. Aug. 28, 2008).

The "Probationary Capias" that the trial court issued on September 29, 2009, contained the judge's signature, listed appellant's probation violations, and directed an officer to arrest appellant. The document also stated that the court clerk should attach a copy of the order to the process to be served on appellant. Appellant's probationary sentence was set to expire on December 15, 2009. The clerk issued the capias on September 29, 2009, and an officer served process on appellant on October 2, 2009. Accordingly, we conclude that the "Probationary Capias" filed by the trial court satisfied the requirements of a probation violation warrant, the court filed the violation warrant during appellant's probationary period,

-10-

and the warrant tolled the revocation limitations period. Thus, the trial court retained jurisdiction to revoke appellant's probation. Appellant is not entitled to relief on this issue.

*C. Revocation*

For his last issue, appellant argues that the trial court's revoking his probation and ordering him to serve his sentence in the custody of the Tennessee Department of Correction after he almost completed his entire probationary term was an unreasonable abuse of discretion. Appellant further posits that the trial court's probation revocation was unreasonable because the State dismissed the underlying charges. The State replies that, considering the serious charges against appellant, the trial court acted reasonably and that appellant failed to cite any authority stating that the dismissal of the underlying charges is relevant to the probation revocation.

The revocation of a suspended sentence rests in the sound discretion of the trial judge. *State v. Leach*, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995); *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). In determining whether to revoke probation, it is unnecessary that the trial judge find that a violation of the terms of the probation has occurred beyond a reasonable doubt. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). If the trial court finds by a preponderance of the evidence that the defendant violated the conditions of probation, the court is granted the authority to revoke the probation and suspension of sentence. Tenn. Code Ann. § 40-35-311(e)(1) (2010). The appellate standard of review for a probation revocation is abuse of discretion. *See Shaffer*, 45 S.W.3d at 554; *State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). Generally, "[a] trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010).

Here, the record supports the trial court's order of probation revocation based on appellant's conduct while on probation. After hearing the testimony at the probation revocation hearing, the trial court found by a preponderance of the evidence that appellant set fire to the victims' house. The evidence at the probation revocation hearing established that appellant had a motive to set the fire, that appellant told Ms. Patterson that he would "deal with her later," and that appellant was at the scene of the fire shortly before it occurred. Although appellant had almost successfully completed his entire probationary sentence, the trial court did not abuse its discretion by revoking his probation. When revoking appellant's probation, the court stated that it "searched for alternatives because [appellant had] done so well . . . , but . . . other than first degree murder, there can't really be much worse than [arson.]" Regarding appellant's claim that the trial court's revocation was unreasonable

because the underlying charges were dismissed, this court has previously held that a trial court may premise a revocation upon proven allegations of a violation warrant, even if the charges have been dismissed. *State v. Agee Gabriel*, No. M2002-01605-CCA-R3-CD, 2004 WL 1562551, at *3 (Tenn. Crim. App. July 12, 2004) (holding that "validity of the original warrant was not affected by the dismissal of the criminal charges arising from the acts alleged in the warrant"); *State v. Larry D. Turnley*, No. 01C01-9403-CR-00094, 1994 WL 714227, at *3 (Tenn. Crim. App. Dec. 22, 1994) ("The fact that the Defendant was not convicted of any of the offenses with which he was charged does not mandate dismissal of the probation violation warrant."); *State v. Delp*, 614 S.W.2d 395, 396-97 (Tenn. Crim. App. 1980) (revocation may be based upon criminal acts alleged in violation warrant even though defendant was acquitted of charges for underlying acts). Thus, we conclude that the trial court did not abuse its discretion by revoking the appellant's probation and ordering that he serve his sentence in confinement. Appellant is not entitled to relief.

III. Conclusion

Based on the foregoing, we affirm the judgment of the trial court.


_____
ROGER A. PAGE, JUDGE